Thank you Judge Gregory and may it please the court. I'm Scott Martin on behalf of Gene Germain the appellant here as appointed counsel. This court and the Supreme Court have repeatedly held that individuals cannot be forced to forego government rights in order to exercise their religion. This applies particularly in the prison context such that if you have a right to avoid Eighth Amendment violations due to inadequate nutrition you can't be forced to give up your religious rights in order to get adequate nutrition. That's precisely what has been alleged here. Mr. Germain alleges that during Ramadan he was provided inadequate nutrition and that it was sufficiently inadequate that he was forced to cease his fast, that is to say give up his First Amendment religious rights in order to obtain his constitutionally guaranteed nutrition. The government responds that these are mere allegations but it ignores that this case arises in the context of summary judgment. The district court converted the motion to dismiss into one for summary judgment and there is at a minimum sufficient record evidence to establish that the imposition of the Ramadan meal policy deprived Mr. Germain of his religious rights. Most significantly the record reflects that the Amitra provided three meals breakfast, lunch, and dinner in order to give them adequate nutritional intake. There are a number of references to the appendix but appendix 22, 74, 104, 168, and the proposition that the three meals together are designed to provide adequate calories. As the district will recognize then if one of those meals is taken away that it stands to reason that the remainder is inadequate. The citation for that is J162 and Mr. Germain produced substantial evidence that during Ramadan rather than receive a combined lunch and dinner after sunset as was provided in the policy he was instead given only dinner in addition to the breakfast. Therefore having received two meals without the lunch he received inadequate nutrition and was forced to give up his fast. The district court said that he made a choice to give up his fast but that again is at most a disputed factual issue. Mr. Germain's said evidence under penalty of verdict saying that it became too unbearable given the inadequate nutrition for him to continue the fast and as this court would have recognized he can't be forced to endure constitutional violations that are too unbearable that's to say inadequate nutrition in order to continue observing Ramadan. The other issue that the district court said was inadequately presented by Mr. Germain was that he had suffered, he had not suffered a weight loss as a result of the inadequate nutrition. There are two responses to that. The first is that he repeatedly alleged and this was in documents that were submitted under penalty of perjury and therefore can be considered in the semi-judgment stage that he had lost weight as a result of the inadequate nutrition. That was a JA 208, JA 30 and 31. Each of those contradicts the district court's apparent factual finding at summary judgment that he in fact had not suffered any adverse weight consequences. The other issue that plagues the district court's decision is that the case was resolved against Mr. Germain notwithstanding these factual issues without giving him the benefit of discovery, notwithstanding his request for discovery under what is now Rule 56D. Now the district court said in its second opinion that Mr. Germain did not submit an affidavit under Rule 56D requesting additional discovery. That's JA 216. What's odd about that is that the district court said in its first opinion at JA 163 that Mr. Germain had submitted an affidavit under Rule 56D. And so it's difficult to reconcile the district court's somewhat conflicting reasoning. But in any event, the record is clear that he in fact submitted two affidavits under Rule 56D asking for additional discovery to resolve whatever doubts the district court might have that he has established a substantial burden on his religion. The citations for that, whatever it's worth, are JA 27 and 206. The government in its brief advances a couple of purported alternate grounds for affirmance that I would like to address briefly. The first is they claim he's not exhausted his administrative remedies. That was not an issue the for this court to consider it in the first instance. Both because it involves factual questions including whether there was an adequate administrative remedy scheme available to him. And second, whether he tried but was precluded from availing himself of the scheme. And so we think that those issues need to be resolved by the district court in the first instance because it would be able to take evidence and consider whether in fact he was precluded from availing himself of those procedures. I had a question about that. Is it necessary for PLRA purposes that a finding be made? Can you address the question more on the merits other than saying that we shouldn't consider it? Yes, Judge Duncan. So the relevant standard, and this comes from Woodford v. Snow, is that the prisoner must exhaust all available administrative remedies. So the question is were there administrative remedies available? And it's clear as a general matter that inmates in the Maryland prison system have administrative remedies available to them. But in this case there's a factual dispute about whether those remedies were actually available to Mr. Germain in particular. He alleged that he submitted an appeal to the Commissioner and it was never acknowledged. Again, under penalty of perjury, so it could be considered at this stage. That's J-29. And again, on the other side, the 50-60 discovery side, he also said, you know, if you give me discovery I can obtain information to demonstrate that I was not provided an avenue to exhaust. Citations for that are J-35 and 36. Thank you. The other two grounds are that Mr. Sheeran had not adequately been involved personally in these alleged violations. That too is an issue the district court didn't address, but it's conflicted by voluminous evidence that he both directed policies that would form a basis for responding at superior liability, but also that he was personally involved in telling inmates they were not entitled to a lunch during Ramadan. And the best citation for that is J-90. And then finally, the government argues that qualified immunity applies to the extent that the court agrees with us that there is a disputed factual question at a minimum. Whether Mr. Germain's rights under the First Amendment, Eighth Amendment, and relu both were violated. Those rights have been established in dozens of cases and so we don't think qualified immunity would be an issue. And so in this case the qualified immunity inquiry merges largely with inquiry into the merits. I have time left, but unless the bench has further questions or areas I'd like to explore, I will cede it. Do you think at this stage your client can probably survive the egregiousness of intentional action? Yes, so really there are two issues there. One is the intentional aspect and then the other is whether there could be an Eighth Amendment claim. Now the Eighth Amendment claim would be based on deliberate indifference to medical needs, in particular adequate nutrition, and he used evidence that the inmates were denied adequate nutrition because they never received the lunch meal that the evidence used by the defendants acknowledged was necessary to provide adequate caloric intake. So that would be the alleged violation. But the caloric intake, even if you're right about the meals, didn't go below the minimum, did it? Is there evidence that it disputed that it did? That is at a minimum a disputed issue of fact. So what evidence did you have that it went below that? So a few things, Your Honor. The first is the evidence that the three meals in combination were necessary to, quote, meet the minimum caloric intake. That's JA-104. It's a declaration from Steininger, who is an employee of the person who worked in Nutrition. But there are other declarations to the same effect, including one from the defendant himself. Actually, this was a memorandum, but JA-74, that says all meals in combination are necessary to meet the minimum caloric intake. And so if, in fact, Mr. Germain was denied his lunch meal during Ramadan, and again there are a number of declarations in the record to support that, then it would follow that he received less than the minimum caloric intake. In fact, this is something the district court recognized. So in JA-162, the court says if the three meal combination is designed to provide minimum caloric intake, and you take one of them away, then it stands to reason that what follows is not sufficient caloric intake. At a minimum, though, that would be a disputed factual question for the jury. There's no evidence in the record to suggest that the breakfast and dinner combination, absent lunch, would have been sufficient to provide minimum caloric intake. The evidence in the record of what meals were provided and what the calories of those meals were includes all three combined. There's nothing that would suggest that, again, taking out one of the meals would leave in place sufficient calories. But then in addition to the Eighth Amendment, there's a First Amendment issue and an Urlupa issue that this is a burden on his free exercise of religion because he's forced to choose between observing the fast or getting adequate calories. The government actually makes an interesting argument that says, well, he didn't plead a First Amendment claim. We disagree with that, I think, for a few reasons. First, I would just note that the Urlupa claim exists on its own, so really all we're talking about is one of the two. But the district court itself seemed to believe that Mr. Germain had pleaded a religious freedom claim. It, in fact, addressed it in its opinion at JA-160, and Mr. Germain's complaints refer to a substantial burden on his religion, which in the liberal constructions according to me should be read at least as a First Amendment claim. And then what's perhaps even more interesting is that the defendant itself seems to recognize that Mr. Germain pleaded a First Amendment claim because they expressly addressed it in their first motion to dismiss at DE-13, page 5. So we believe that in addition to the Eighth Amendment claim that should survive summary judgment, there are free exercise claims, both statutory and constitutional, that should have been allowed to go forward. Could you just briefly summarize for me the basis of your argument that Sharon is not entitled to qualified immunity? Sure. As an initial matter, of course, that was not addressed by the district court. The argument would be that the Eighth Amendment right against deliberate indifference to prisoners' needs and the First Amendment and statutory right to avoid substantial burdens on one's religion have been recognized in case after case. There's no doubt that those are clearly established rights. Now, the government says, well, you can't define them at that level of generality, but we're talking here about denial of adequate nutrition, which is an issue the courts have previously addressed, and that's the Eighth Amendment issue. And on the First Amendment side, we're talking about being forced to choose between your religion and adequate calories, and that is an issue that has not only been repeatedly addressed, but was addressed in Lovels versus Lee. And Sharon's awareness of it, how does that factor in? Well, so we believe he was both aware of it and, in fact, erected it. The evidence says that Sharon admitted, in fact, in a response to an inmate complaint that they were not being provided lunch. That's JA-169. He also separately spoke to an inmate named Andrew Dix to say that there was no lunch. That's JA-90. And then he received a letter from the commissioner saying, you need to increase calories in order to comply with your obligations. And his response, which is JA-74, says, we have since, that is to say after the complaint, made changes to ensure that participants in the fast during Ramadan will be given additional food items for dinner to bring them up to a required calorie intake for the day. Again, another reference to required calorie intake that's not being provided simply by the without lunch meal program. Thank you. Thank you. Thank you. Ms. Martin, Ms. Langeweber. Thank you, Your Honor. Thank you. May I please the court? My name is Stephanie Langeweber. I'm an assistant attorney general for the state of Maryland, and I represent former warden Bobby Sheeran in this matter. This court should affirm this summary judgment granted to my client because on this record, there is no evidence whatsoever, not a whit of evidence, that Mr. Jermaine's religious rights were violated in any respect. He has not met his burden to show that there has been a violation of his religion as a Muslim who observes Ramadan. The record is replete with information that Mr. Jermaine is a well-nourished, healthy inmate who, before Ramadan, and it's important to note that Ramadan in 2013 was from July 9th to August 7th of 2013, that right before Ramadan, he weighed approximately 177 pounds, 178 pounds, as he put in his complaint. And then on August 10th, just shortly thereafter Ramadan, three days after Ramadan, he weighed 171 pounds, I believe. Pardon me, he weighed 177 pounds, and that's the appendix 177. When he was seen by a medical care provider just days after Ramadan, he admitted that he had not lost significant weight, said he had not been overnourished, that he was in good shape, and he had a good BMI. Dr. Mott found that Mr. Sheeran did not violate any religious rights of Mr. Jermaine because Mr. Jermaine failed to show substantial burden on his religion, and instead just alleged in a very speculative sort of way that he could not fast the way he wanted to. Well, wait a minute, I thought that, I didn't think there was a dispute that there were, he was not served his lunch and dinner equivalent after sundown on, during Ramadan of 2013. Your Honor, I'll try to clarify that. There is no dispute that Mr. Jermaine not receive a lunch during the Ramadan period. Correct, and he did not, I'm sorry, but, I'm sorry, go ahead. But there, it was my understanding that he did not receive food to make up for, in fact, that was the gravamen of this complaint, that he didn't receive food to make up for that caloric deprivation after sundown. In fact, that's what led to the change in policy, is it not? Well, there wasn't, there was a change of policy at North Branch insofar as, let me, let me try to give an overview, Your Honor. The Division of Correction has always concerned about the dietary accommodations for inmates who have been involved in religious practices. In fact, if this court looks at the French case that's referred to in the pleadings, the district court found that there's been a good history by the Division of Correction to try to an octo-lovo diet, got rid of pork, have consulted with experts throughout the years for the dietary needs. Richard West wrote a declaration. He was in charge of the entire Division of Correction's dietary accommodations for religious inmates, and his declaration says, at page 96 of the record, that the food that was to be consumed was to be consumed before sunrise. That's a record at page 96. Mr. Steineger also tested, also wrote in a memo that, appendix 98, that what was supposed to occur was that Muslims during Ramadan for 2013 were supposed to receive a breakfast before sunrise and a dinner after sunset, and as well as a piece of fruit or vegetable from the lunch. And that was it. There was no indication that they were going to get a full caloric, all the meals that non-practicing Muslims would be receiving. But isn't that exactly what was challenged? And it was my understanding that there was a memorandum in 2014 indicating that there were changes to prison policy to ensure that fasting inmates received additional food. And in fact, the district court, at least initially, found there to be a genuine issue of material fact as to what that memorandum told us about the status prior to the recognition, or prior to the change that was referenced. Yes, Your Honor, insofar as North Branch Correctional Institution was not following what the Division of Correction had said, and that a change was made so that an additional amount of food would be given to bring them up to the minimal calories that were required, not the full calories that were required for inmates who were not practicing Ramadan at the time. Mr. Germain failed to show a violation of the Religious Land Use and Institutionalized Persons Act, not only because he didn't show a burden upon his religion, but there's no information whatsoever in the record that would ensure an act with intent to harm his religious rights. In fact, everything in the record regarding Mr. Shearing mainly occurs after Ramadan had taken place, which was July 9th to August 7th, 2013. When Appellant refers to the record saying that Mr. Shearing knew that there were problems with Ramadan or that there were problems that the inmates were complaining about, he points to page 169 of the record. I would direct this Court's attention to that also because it shows that in response to Administrative Remedy Procedure by an inmate by the name of Dix, he stated on August 13th, 2013, after Ramadan, that it was his understanding that a practicing Muslim should have only a breakfast and a lunch. But that occurred after Ramadan took place. Like the French case, there's not any evidence in this record that Warden Shearing knew that the inmates were complaining with regard to not getting a lunch for Ramadan. So, the other reason why Relipa, Religious Land Use and Institutionalized Persons Act, does not apply in this case at all is because Mr. Germain requested for relief and only damages. And under Relipa, as this Court has said in Lovelace and in the Wade case, I believe in Article 5, under Relipa, you do not get damages against prison officials for violations of that. Damages are just not available according to Lovelace and Wahl versus Wade. So, for these reasons, I would submit that there was no showing of any violation of Relipa. Appellant also indicates that he thought that Judge Motz abused his discretion in not permitting more discovery in this case or discovery in this case. Judge Motz did not abuse his discretion in finding that Mr. Germain was not entitled to the matters he was requesting. First, Mr. Germain is a person who is a, as Judge Motz said, a prolific litigator. Judge Motz, in his opinion, called him a capable adversary. And that's true. According to Pacer, last week, Mr. Germain has filed 25 cases in the Federal District Court and 14 cases in this Court. So, he knows his way around litigation to a large extent. Judge Motz found that Mr. Germain was not entitled to request for discovery on his medical records because, as an inmate, Mr. Germain could have requested his medical records from the medical care provider. Also, Judge Motz found that Warden Sheeran, as a former warden, would not have possession of those medical records. They would be in possession of either the Division of Correction or the medical contract provider. So, for these reasons, he determined... But that wasn't all that was sought. Yes, you're right. Another thing that was sought was, Mr. Germain said he needed an expert to advise the Court that he was entitled to the full calories that all inmates get, including those who don't participate in Ramadan. Judge Motz found that wasn't necessary because if Mr. Germain wanted to show that, he should have indicated to the Court why that was specifically necessary. And Mr. Germain could have presented that information himself under declaration or affidavit, which he did not. Instead... That wouldn't make him an expert, would it? His affidavit, would it? Well, I would let the Court know that he, as a Muslim, believed that that was important to him. He couldn't give an opinion testimony in his affidavit, could he? He could give his opinion about what he believed his religious tenets were, Your Honor, I believe. I think the whole point is the authenticity, because you can't use it as a sword and a shield. You were saying, well, you're fasting, and the whole point, you're supposed to be deprived of food to some degree? And he was saying, no, there's a different school of thought in the Islamic tenets that I follow in Ramadan, and I need an expert to show that. That's what he was saying. And you're saying that could be made up solely by his affidavit of what he felt about his religion? I think he could have provided that information, Your Honor. But the other point, Your Honor, is no expert was necessary. The Division of Correction and different prisons across the nation have understood that Ramadan requires fasting. It's called Ramadan fasting. And the word itself suggests that the meals are not the same caloric intake that people would be when they're not fasting. It's generally accepted. And so Judge Motz found that Mr. Druman's request for that was not sufficient. But you're making an assumption. What should be the caloric intake during the time of day when he's not fasting? What should it be, based on your expert in terms of Ramadan? What is it? We know nutritionally that according to the declarations put in by Richard West and the memo by Mr. Steininger, who's a certified dietitian, that the food that was available to Mr. Druman was calorically sufficient. But he wasn't getting his lunch. Pardon me? He wasn't getting his lunch. He wasn't getting his lunch, but he still had calories. Mr. Steiner put in his declaration that a person who weighs 177 pounds needed about 2,011 calories. This is at Appendix 177 under oath. Mr. Steiner stated that when he looked at several, like four, of the meals that were provided during Ramadan, he saw that at least 2,061 calories were provided. And in his view, that was nutritionally adequate for Mr. Druman. Those were the meals provided generally, correct? Those were the meals that were provided to Mr. Druman if he wanted them because, as Mr. Steiner continues in his declaration, because a correctional officer was hurt badly and assaulted on July 5th of 2013, and because correctional officers previously had been hurt, North Branch was under lockdown so that all the meals were provided to the inmates in their cells. And Mr. Druman, if he wanted to, could have accepted the breakfast, kept the lunch, eaten it after sunset, and the dinner. But he chose not to do that. Mr. Druman is, in effect, asking this court to provide an exception for him that has not been countenanced previously. The district court in the French case determined that the lack of a lunch was not a matter that violated the Religious Land Use and Institutionalized Persons Act or violated the First Amendment because there was no showing that there was any harm to the inmates who were then still complaining. Likewise, there's no harm here. There's no showing that Mr. Druman was hurt in any way. Is that the standard for a religious exercise? It has to be a harm outside of the fact that it disrupts your way, whether you want to freely exercise your religious practice versus what burden you have? It is a burden to him, wasn't it, that he didn't get his lunch? Your Honor, it was a slight burden to him, perhaps, but it's not a burden sufficient under the Religious Land Use and Institutionalized Persons Act. It's not just that an inmate prefers to get his meals in a certain way, in the manner that he wanted, in the way he wanted. It's whether there was a violation of a religious right, and that's not what we have here. Did you offer him? Pardon me? Did you offer him that he couldn't get his lunch the way he wanted, which is serve him two meals at the same time after sunset? I'm sorry, Your Honor, I didn't hear you. Was there any justification or penological reason why it could not be done in this case? That he couldn't get an extra lunch? What extra lunch? He didn't get the lunch. Couldn't he have gotten his lunch and dinner after sunset for dinner? The program was set up so that he should have received a dinner and a part of a lunch after sunset. But he didn't. That's not clear, Your Honor. Every declaration… No, it's not clear, so it's disputed. No, it's not disputed, Your Honor. We will agree that Mr. Germain did not get a lunch. And every declaration filed by every other inmate in this matter on the record indicates that he was given a breakfast and he was given a dinner. Does he dispute that he got the extra, I think it was a vegetable and a fruit? Is that the argument? In the initial complaint, Mr. Germain said that all he received was one wholesome meal a day and that wasn't sufficient. Later in some of the pleadings, he said, oh, it was a wholesome meal plus half of another meal. It's not exactly clear what Mr. Germain is saying other than he wasn't satisfied with the program that was set up for the benefit of the Muslims who wanted to fast during Ramadan. The Division of Correction went to a lot of effort to make sure that the Muslim inmates could receive a good breakfast before sunrise, and they would receive dinner after sunset so that they could fast in accordance with the religious precepts. Because Mr. Germain has not shown a substantial burden on his religion, because he also has not shown that wouldn't share an act with any intentional conduct to thwart his religious rights, and because Mr. Germain did not ask for damages, this Court should find that there's been no violation of Rulipa whatsoever. In this situation, as the Supreme Court says in Cutter v. Wilkinson, context matters. It is clear that the Division of Correction attempted, and states in the record, that provided calorically sufficient meals for the inmates who are practicing Ramadan. This isn't a situation, this is a situation where, at most, Mr. Germain didn't have a lunch. We're not saying, there's no indication that he only had half the calories that ordinary inmates would receive, or he had two-thirds less the calories that other inmates received. This is just a matter of not having a lunch. Well, going back to my question about the 2014 memorandum prepared by Sharon, he acknowledged that there were changes to ensure that fasting inmates received additional food to provide them with the required caloric intake, and that there were affidavits submitted from other Ramadan participants indicating they were not receiving adequate amounts of food. That suggests that, at least prior to that memorandum, there was at least a dispute about whether fasting inmates were receiving adequate food. Why is that not a correct interpretation of that memorandum? Your Honor, because, with regard to the record, that's just a very small portion of it, and what it really means, and what I'm trying to say is, the Division of Correction program was set up so that there would be a breakfast and dinner only for Ramadan. That's at page 101 of the appendix. And then at dinner, there would be an extra vegetable, fruit, or dessert. It's also at page 1 of the appendix. I'm so sorry. I'm not understanding that to be responsive. I apologize. Why is the January 2014 memorandum not a recognition of a concern about a deficient caloric intake previously? I agree that that memorandum acknowledges that the caloric intake as set up by the Division of Correction for Ramadan was not fully provided. And in the context of the records in front of the court, what was not provided was a fruit or a vegetable, and that was it. And so, there are different, I'm saying there was no caloric, a lack of caloric intake that was, that had an impact on the inmate's health. So, you're saying that, although it might have been, although the memorandum appears to recognize the deficiency, it's your contention that the deficiency did not cause, any deficiency that existed did not cause harm to the inmate's health? Absolutely, Your Honor. Yes, that is it. And the record reflects that Mr. Germain was a well-nourished, well-developed 171-pound inmate just days after Ramadan. 172, and he had been 177, I believe, at the time? Roughly that, Your Honor, yes. So, he did lose. He lost a little weight, but he was doing well. Well, you know, I don't know, it's almost like saying, you know, tell somebody who's manning the press and cheer up. I mean, I don't think it's quite that simple. The question is this, here's my question to you. If everyone else got three meals a day, okay, wait a minute, I'm not finished. Three meals a day, and the total caloric intake was 3,000 calories, right? And the other person, because of their religious... This is hypothetical, but somewhere related, but still hypothetical. The person, because of their religious practice during this period of time, would only get one meal, but it still added to 3,000. You're saying that no matter what, whether or not they were hungry during the day or not, or whatever pains they went through, or might not have enough food, as long as you had the total calorie intake that day, there's no burden of you being hungry during the day. That's not a burden. That's not a burden that would be recognized as a violation of a religious right, Your Honor, absent other circumstances. If you have a healthy inmate, which Mr. Germain was, yes, I would say that's not a violation of their rights. If there was someone that said you had a fast, and you could accept full calories as any other person who's non-practicing. So you would have to give him breakfast if you wanted. You could just load him up for 3,000 at dinner. I don't know, Your Honor. I don't... As long as he's healthy, as you said, right? I suspect that could be true, Your Honor, yes. Well, if that's your view, I understand your position. I see what the State of Maryland is saying. The State of Maryland has gone to a lot of effort to provide Muslim inmates with a practice during Ramadan that was consistent with its religious tenets, and I would ask this Court to find that Mr. Germain's lawsuit, that summary judgment was properly granted to Warden Shearing. Thank you. Thank you so much. Mr. Martin, you have time reserved. Thanks, Judge Gregory. A few points in response. I'd like to begin with the evidence that the meals provided were supposedly sufficient, if not to be the full intake that he otherwise would have received, but at least the minimum that can't be squared with the evidence in the record. The defendant himself, or documents submitted by the defendant, repeatedly acknowledged that all of the meals were necessary to meet that. And perhaps the best example of this is on App 104. This is a document governing observance of food requirements. It says that the additional food is necessary, quote, to meet the minimum caloric intake and health requirements to the registered participants. The same language appears elsewhere on App 22, 74, 168, and 173. In each case, a recognition that all three meals are necessary to meet the minimum intake. Counsel referred to a declaration from Richard West and some materials from Scott Steininger, who she claims suggests there was sufficient calorie intake provided. The declaration from Mr. West does nothing at all relevant to Mr. Germain, just doesn't. The information from Scott Steininger, there are actually two pieces. One is a memorandum, and then there's a declaration also. The memorandum talks about a lunch-dinner combination served at sunset. And so there's no way to read that as addressing what would happen if you omit the lunch meal. And then the suggestion that there was additional food for dinner, and maybe that would have made up for it, that's contradicted by the declaration of a large number of inmates who said there was no additional food provided for dinner. Without going through all the citations, they're noted, among other places, on page 8 of our brief. The district court itself acknowledged that at JA-161. It also appears at JA-162. So at a minimum, there is a disputed issue of material fact. In fact, I think summary judgment should have been granted from Mr. Germain. But at a minimum, a disputed issue of whether there was any additional food provided. And if there was none, the deprivation of the lunch meal that should have been provided in combination with the dinner meal brought the amount of calories under a nutritionally sound amount. The 56D issue that has been addressed, the first issue I would note on that is the court's reasoning was expressly there has been no 56D declaration filed. That's not true. There were two. We've cited them to the court. That's sufficient for reversal as an abuse of discretion without any more. But even on the grounds that the district court hinted at that it could have been pursued from other individuals and that Mr. Sheeran didn't have the medical records, we know that Mr. Sheeran had the medical records because he filed certain of them with the district court. And there's no evidence in the record to suggest that Mr. Germain could have obtained that information other than through discovery. Now, the last point I'd like to address is the substantial burden. There's no requirement that Mr. Germain have lost a substantial amount of weight in order to pursue a claim under the First Amendment or under RLUIPA. What do you say about RLUIPA's limitation when it comes to the kind of remedy that can be offered? Yes, it's simply not accurate that he seeks only damages. His prayer for relief, the third item listed in each of the complaints, asks for other relief as just, which should be understood to include equitable relief. And we know that because footnote two of the district court's second opinion acknowledges that he had filed a motion for Mr. Germain to move for a preliminary injunction. And so it's simply not true that there's only damages issue in this case. But for the substantial burden, this court held in Loveless v. Lee, that that can be satisfied simply by forcing an inmate to choose between his religion and his constitutional rights. And that's what happened here. The last thing I'd just like to point out briefly, on the issue of weight loss, the records that were provided to suggest that there wasn't much weight loss, it was still five pounds, were from several months before Ramadan and well after he had stopped fasting. And the suggestion that 2,061 calories would be sufficient is contradicted by the evidence that the defendant himself submitted, which is JA 151, which says that the program is designed to support 2,800 and 3,000 calories. Mr. Germain has a sworn statement to the same effect later in the record. If there are no further questions. But what do you say about the exhaustion argument? Your gentleman filed his complaint evidently well before the time periods expired during which he could have pursued his administrative remedy. Well, the difficulty with that argument is he alleges in the complaint, which is sworn under penalty of perjury and therefore can be considered a summary judgment, that he never received a response to the, actually, I'm sorry, I misspoke. It was in the 56D declaration, the first one, that he never received a response or an acknowledgment of a response from the commissioner. And that was critical because he also submitted evidence that without that documentation in hand, his request for administrative review would have been denied. There were at least two pieces of evidence in the record, JA 35 and JA 36, are documents saying because you do not have copies of all of the previous records, your process can't go forward. And in combination with his sworn allegation that he did not receive any documentation, there was simply nothing he could do. Now, at a minimum, though, we think that's an issue that the district court should address in the first instance and that may well be subject to additional discovery to figure out precisely what happened to make the administrative process go awry. All right, Mr. Martin. Thank you, Your Honor. The court notes that you were court-appointed. We want to especially thank you because under the Criminal Justice Act, our job could not be done without counsel like yourselves who help us in the pursuit of justice. We thank you so much. Thank you, sir. Likewise, Ms. Lane Weber, we thank you for ably representing the state, the old line state of Maryland. Thank you, sir. We'll come down with counseling and proceed to our final case.
judges: Roger L. Gregory, Allyson K. Duncan, Richard L. Voorhees